IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEPANTA JALALI, | : |
| | :     Case No. 2:16-CV-512 |
|     Plaintiff, | : |
| | :     JUDGE ALGENON L. MARBLEY |
| v. | : |
| | :     Magistrate Judge Jolson |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | : |
| | : |
|     Defendant. | : |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross-motions for Summary Judgment by Plaintiff Sepanta Jalai (ECF No. 24) and Defendant Unum Life Insurance Company of America (ECF No. 25). For the reasons that follow, the Court **DENIES** Unum's Motion for Summary Judgment as to whether Ms. Jalali can proceed in equity; **GRANTS** Unum's Motion for Summary Judgment and **DENIES** Ms. Jalali's Motion for Summary Judgment as to the theories of unclean hands, waiver, and laches; **DENIES** Ms. Jalali's and Unum's Motions for Summary Judgment as to the applicability of the make whole doctrine; and **REMANDS** the matter to Unum for further fact-finding on the question whether Ms. Jalali was made whole by the settlement proceeds.

### I.     BACKGROUND

This is an ERISA case. The sole question at issue is whether Defendant Unum Life Insurance Company (Unum) can apply an offset to the long-term disability benefits it pays Plaintiff Sepanta Jalali for money that Ms. Jalali received in a third-party settlement.

#### A.     Factual Background

The underlying facts are undisputed. On January 10, 2007, a teenage driver named Kathryn Wenzke pulled in front of Plaintiff Sepanta Jalali's car and then stopped suddenly.

1

(ECF No. 21-1 at 1, ECF No. 22-1 at 45). Ms. Jalali's car crashed into Ms. Wenzke's car; Ms. Jalali's car was totaled and she suffered debilitating injury. (ECF No. 21-1 at 1).

At the time, Ms. Jalali was a medical student at the University of Toledo, but because of her injuries, she was unable to graduate on schedule. (*Id.* at 1-2). When she graduated, Ms. Jalali matched with the family medicine residency program at Mt. Carmel Health System in Columbus. (*Id.* at 2). During her residency, it became clear that she could not perform some of the functions required of her due to her injuries, and by November 2008, Ms. Jalali "could no longer even stand up fully to extend [her] body and walk." (*Id.* at 2-3).

Ms. Jalali is the beneficiary of an employee welfare benefit plan maintained by Mt. Carmel Health System and insured by Unum. (*Id.* at 3). Unum approved long-term disability benefits for Ms. Jalali in a letter dated June 15, 2009, and determined that she was entitled to a monthly benefit of $2,400.32. (UA-CL 344-47)[1].

Ms. Jalali and her husband, Majid Khojastehpour, filed suit against Ms. Wenzke in 2009. (UA-CL 1320). Their attorney sought to determine whether Unum would claim a right of subrogration or reimbursement of benefits from any proceeds accrued from the suit. (UA-CL 1665). Unum responded that it was "possible that we may have some amount of a reimbursement interest in those proceeds that [Ms. Jalali] may receive from a third party." (UA-CL 1688). It attached to the correspondence the relevant pages from the policy, which provide in relevant part that that "Unum will subtract from your gross disability payment . . . [t]he amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement, or otherwise." (UA-CL 116-17). The policy also provides that Unum is entitled to relief from benefit overpayments:

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable

---

[1] The Court uses these record citations to refer to the Administrative Record. (ECF No. 28, 29).

> relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the policy. Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

(UA-CL 136).

Unum twice requested that Ms. Jalali complete and return an "Accident Questionnaire" certifying that she would notify Unum prior to settling a claim. She did not respond to those requests. (UA-CL 1311–14, 1412–16.)

In 2011, the personal injury suit reached settlement. (UA-CL 2640-42). Ms. Wenzke's insurer paid Ms. Jalali and Mr. Khojastehpour $925,000; after attorney's fees and expenses, Ms. Jalali and Mr. Khojastehpour jointly received $631,530. (Appx. 2, UA-CL 2558-2560). Unum was notified of the settlement as of February 13, 2012, but, at the time, took no action to recoup any of the proceeds. (UA-CL 2348).

Meanwhile, Ms. Jalali and Mr. Khojastehpour used the settlement funds for various expenses. As Ms. Jalali later recalled:

> We completely paid off the remaining $180,000 mortgage on our home in Sylvania, OH, which we were unable to sell due to the recession. We also utilized around $110,000 to pay down my student loans. We also paid down the mortgage on our present home by $80,000. A huge portion of the funds has also been used to pay for prior and ongoing medical expenses related to the accident. … We also spent several thousand dollars on changing the layout of our home to limit the need for me to go up and down stairs and spent over $1,000 to add a running board to our vehicle to help me get in and out of the car with less difficulty.

(ECF No. 28-4 at 2).

### B. Procedural Background

Ms. Jalali previously sued Unum in this Court after Unum determined that she was no longer disabled under its policy. *Jalali v. Unum Life Ins. Co. of Am.*, No. 2:12-CV-00828, 2014

WL 1212708 (S.D. Ohio Mar. 24, 2014) (*Jalali I*). This Court determined that Ms. Jalali had been arbitrarily and capriciously denied her long-term disability benefits and ordered that she be afforded continued benefits as well as interest, fees, and costs. *Id.* at *6. Unum never asserted a right to subrogation or reimbursement under this litigation.

In May 2014, after the Court issued its order, Unum expressly claimed an interest in the proceeds Ms. Jalali received from the settlement with Ms. Wenzke. (UA-CL 2577). In November of the same year, Unum informed Ms. Jalali that it sought the full amount of the settlement: $631,530. (UA-CL 2704-2706). In pursuit of that those funds, Unum prorated the $631,530 over the life of Ms. Jalali's claim and reduced her monthly benefit the prorated amount to $928.22 per month. (UA-CL 2705). It also determined that it had been overpaying her claim from its inception in the total amount of $94,855.65 and reduced her benefit to zero for 102 consecutive months until it recouped the overpayment. (*Id.*).

Ms. Jalali appealed this decision and prevailed on only one point: that the offset was inequitable because the settlement was jointly payable to Ms. Jalali and Mr. Khojastehpour. (UA-CL 2849-2851). Unum therefore adjusted its overpayment calculations, determining that Ms. Jalali's monthly benefit should be $1472.10 and that it had only overpaid her $31,829.81. It continued to withhold her monthly benefit until it recouped the $31,829.81, and in April 2017 it resumed payments at $1,664.27 per month. (UA-CL 2909).

Ms. Jalali filed a Complaint in this Court seeking equitable relief under 29 U.S.C. §1132(a)(3). (ECF No. 1 at 6). Specifically, she seeks a determination that Unum is not entitled to offset her disability benefits by any amount she received in the settlement. She asserts several arguments to that effect, including waiver, laches, estoppel, and the "make whole" doctrine. *Id.*

Both Ms. Jalali and Unum filed motions seeking summary judgment on this issue on November 3, 2017. (ECF Nos. 24, 25). Those motions are ripe and ready for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Generally, federal courts review a plan administrator's decision to deny benefits de novo, but where the plan administrator reserves discretionary authority to determine eligibility and construe policy terms, the more deferential arbitrary and capricious standard of review applies. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). Here, the policy

provides that Unum has "discretionary authority to make benefit determinations," including "determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing [policy] provisions." (UA-CL 2577). All claims other than those for denial of benefits "are addressed in the first instance by the district court, requiring no deference to any administrator's action or decision." Bidwell v. Univ. Med. Ctr., Inc., 685 F.3d 613, 616 (6th Cir. 2012) (quoting *Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416, 427 (6th Cir. 2006)). Here, there are no claims related to benefit determinations or policy terms; instead, Ms. Jalali seeks equitable relief from the terms of the policy. The Court thus affords no deference to Unum's decisions or actions.

### III.     ANALYSIS

#### A.     Ms. Jalali May Proceed In Equity

Ms. Jalali brings her action under 29 U.S.C. §1132(a)(3), which provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Unum argues that, as a threshold matter, Ms. Jalali's claims must fail because, contrary to the phrasing in the Complaint, she is not actually seeking "equitable relief" under 29 U.S.C. §1132(a)(3). Instead, Unum argues, her allegations are to recover benefits and/or to enforce her rights under the terms of the policy. (ECF No. 25 at 6). Thus, the argument goes, any relief must be afforded under the remedial provision designed to recover benefits due to her under the terms of the plan. Because she advances no such allegations, Unum argues that her Complaint must fail.

Here, Ms. Jalali's claim is not equivalent to a claim for wrongful denial of benefits. Far from it: her claim is that, for one equitable reason or another, Unum may not enforce the provisions of the policy that could otherwise entitle it to a reimbursement interest in the settlement proceeds. As this Court recently observed, "the fact that money is fungible and [a given remedy] would 'take[ ] the form of a monetary payment does not remove it from the category of traditionally equitable relief." *Schmitt v. Nationwide Life Ins. Co.*, No. 2:17-CV-558, 2018 WL 4051835, at *3 (S.D. Ohio Aug. 24, 2018) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011)). Instead, the test for whether a remedy constitutes "appropriate equitable relief" under the statute is whether such relief was "typically available in equity . . . ." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Here, Ms. Jalali asserts several theories – waiver, laches, estoppel, and the "make whole" doctrine – all of which could be construed as an effort to equitably reform the contract. (ECF No. 1). As the Supreme Court has noted, "[t]he power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud." *CIGNA Corp. v. Amara*, 563 U.S. 421, 440–41, 131 S. Ct. 1866, 1879–80, 179 L. Ed. 2d 843 (2011). In a footnote, Unum argues that Ms. Jalali cannot be said to seek reformation because she "suggest no changed language that would 'reform' the [p]olicy." (ECF No. 32). But specific language is not necessary; non-enforcement of particular policy provisions that would otherwise entitle Unum to reimbursement is itself a suggested reform. The form of relief Ms. Jalali seeks therefore presents no bar to her recovery, and the Court **DENIES** Unum's Motion for Summary Judgment on this ground.

  **B.**  **Unum's Claim Is Not Barred By The Doctrine Of Unclean Hands**

The next question is whether Unum's claim of reimbursement is restricted by the equitable doctrine of unclean hands. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). A fiduciary such as Unum breaches that duty "by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (quoting *Krohn v. Huron Mem. Hosp.,* 173 F.3d 542, 547 (6th Cir. 2002)). "To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their detriment." *Id.* (citing *Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 122, 126 (2d Cir.1997); *Unisys,* 57 F.3d at 1266; *McMunn v. Pirelli Tire, LLC,* 161 F.Supp.2d 97, 120 (D.Conn.2001)). A misrepresentation is material "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision . . . ." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (citing *Fischer v. Phila. Elec. Co.,* 994 F.2d 130, 135 (3d Cir. 1993)). Moreover, "a plaintiff's reliance on the misrepresentation must be 'reasonable.'" *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006) (citing *Parks v. Fin. F.S.B.*, 345 F.Supp.2d 889, 897 (W.D. Tenn. 2004)).

Ms. Jalali argues that when Unum responded to Ms. Jalali's attorney's query whether Unum would seek a right to reimbursement, "Unum knew . . . that its reimbursement claim would depend upon how the Wenzke Settlement was characterized. Yet Unum stayed silent, and

by its silence breached the fiduciary duty that it owed to [Ms.] Jalali to inform her (or, in this case, her attorney)" of all material information.  (ECF No. 24 at 11).

Here, though, Unum adequately informed Ms. Jalali that it could seek a reimbursement: it informed Ms. Jalali that it was "possible" that it could seek reimbursement and referred her to pages in the policy that unambiguously indicated that "Unum will subtract from your gross disability payment . . . [t]he amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement, or otherwise." (UA-CL 116-17).  That Unum did not unambiguously indicate in that email that it planned to seek that reimbursement is not a misrepresentation: it was an accurate representation based on then-known facts.  "ERISA does not impose a 'duty of clairvoyance' on fiduciaries," *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993), and Unum did not at the time know if a settlement would manifest, or whether it would be a sound business decision for Unum to pursue the settlement.  It knew only what the policy indicated: that it had a right to offset the settlement.  This is not a misrepresentation at all, let alone a material one that would mislead a reasonable employee.  And nothing in the record—or in logic—suggests that Ms. Jalali did in fact rely on Unum's email in determining her negotiating position in the Wenzke settlement.  Because a partial amount of the total settlement belonged to her husband, even if Ms. Jalali recovered nothing herself, her household still stood to recover.

Ms. Jalali cannot establish a breach of duty on those facts, and the Court therefore **GRANTS** Unum's Motion for Summary Judgment on this claim and **DENIES** Ms. Jalali's.

### C. Unum's Claim Is Not Barred By Waiver

Waiver is "a voluntary and intentional relinquishment of a known right." J. Calamari and J. Perillo, The Law of Contracts § 11–29(c) at 491 (3d ed.1987); *LeBoon v. Lancaster Jewish*

*Cmty. Cntr. Ass'n.*, 503 F.3d 217, 225 (3d Cir.2007) (citing *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)); *see also Thomason*, 9 F.3d at 647–48; Agee, 2007 WL 923090, *5. *See also Schempp v. GC Acquisition, LLC*, 630 F. App'x 541, 546 (6th Cir. 2015) (assuming, without deciding, that the knowing-and-voluntary requirement applies to waiver cases in the ERISA context). "[I]n order to establish a claim of waiver, the plaintiff must demonstrate that the defendant intentionally relinquished its known rights, resulting in a detriment to the plaintiff or a benefit to the defendant." Agee, 2007 WL 923090, *5.

There does not appear to be evidence in the record that would support the notion that Unum intentionally relinquished its known rights. To the contrary, Unum actively asserted its right to reimbursement in at least four ways: first, through the express language in the policy (UA-CL 116-17), second, through correspondence with Ms. Jalali's attorney (UA-CL 1688), third, through the requests for information in the Accident Questionnaires (UA-CL 1311–14, 1412–16), and fourth in its May 2014 claim of interest in the settlement proceeds. (UA-CL 2577). This evidence is consistent with Unum's claim that it communicated with Ms. Jalali in such a manner that would demonstrate its intent to seek reimbursement from any settlement reached.

Ms. Jalali argues that Unum voluntarily and intentionally abandoned its recoupment defense by failing to assert its claim during the pendency of the litigation in *Jalali I*. It is true that Unum initially pled reimbursement as an affirmative defense, then ultimately abandoned that defense in *Jalali I*. The facts in the record complicate Ms. Jalali's narrative, however. Unum asserted its reimbursement interest in *Jalali I* on multiple occasions separate and apart from its affirmative defense. (See, e.g., February 25, 2013 Email to Plaintiff's Counsel; March 14, 2013 Email to Plaintiff's Counsel; May 31, 2013 Email to Plaintiff's Counsel; June 4, 2013 Emails to

10

Plaintiff's Counsel; June 12, 2013 Email to Plaintiff's Counsel; June 22, 2013 Email to Plaintiff's Counsel.) And Ms. Jalali's attorney acknowledged that the conclusion of *Jalali I* was an appropriate time at which to address "whether Unum is entitled to set off any portion of the settlement proceeds." (April 4, 2014 Letter to Unum's counsel). These facts suggest that the parties were both aware that Unum planned to assert is interest in the settlement proceeds, and do not support a conclusion that Unum knowingly and willingly abandoned its right to offset. The Court therefore **GRANTS** Unum's Motion for Summary Judgment and **DENIES** Ms. Jalali's Motion for Summary Judgment on this claim.

### D. Unum's Claim Is Not Barred By Laches

Next, Ms. Jalali argues that the equitable doctrine of laches bars Unum's reimbursement claim. Laches consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party. *Meade v. Pension Appeals and Review Committee*, 966 F.2d 190, 195 (6th Cir.1992). Ms. Jalali argues that Unum was not diligent in pursuing its claims because it did not do so in 2011 when Ms. Jalali's attorney reached out to Unum, nor did it do so in February 2012 when it learned of the settlement. (ECF No. 24 at 15). Ms. Jalali has testified that had Unum asserted its claim, she would not have dissipated the settlement funds. (ECF No 28-1).

These facts are not sufficient to establish that the doctrine of laches bars Unum's recovery. There is no strict time limit within which Unum must seek enforcement, and there is no evidence that the delay caused Ms. Jalali's legal position to change. That is to say: if the policy requires that Ms Jalali reimburse Unum, that conclusion is unaltered by her having dissipated the settlement funds. "Absent such a change in the relative positions of the parties the doctrine of laches will not apply." *N.L.R.B. v. Taylor Mach. Prod., Inc.*, 136 F.3d 507, 514 (6th

Cir. 1998). The Court therefore **GRANTS** Unum's Motion for Summary Judgment and **DENIES** Ms. Jalali's Motion for Summary Judgment on this claim.

### E.     Unum's Claim May Be Barred By The Make Whole Rule

Generally, "an insured should not be allowed to retain a double recovery at the expense of the insurer." *Copeland Oaks v. Haupt*, 209 F.3d 811, 814 (6th Cir. 2000) (citing 16 Couch on Insurance 2d § 61:18 ("Subrogation has the dual objective of (1) preventing the insured from recovering twice for the one harm, as would be the case if he [sic] could recover from both the insurer and from a third person who caused the harm, and (2) reimbursing the surety for the payment which it has made.")). To prevent double recovery but ensure that ERISA beneficiaries receive the recovery to which they are entitled, the Sixth Circuit has adopted the "make whole" rule of federal common law, which "requires than an insured be made whole before an insurer can enforce its right to subrogation under ERISA, unless there is a clear contractual provision to the contrary." *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000). As the Sixth Circuit has held, "[s]uch a rule is consistent with the equitable principle that insurer does not have a right of subrogation until the insured has been fully compensated . . . ." *Marshall v. Employers Health Ins. Co.*, No. 96-6063, 1997 WL 809997, at *4 (6th Cir. Dec. 30, 1997).

The first question, then, is whether there exists a clear contractual provision in the policy that establishes Unum's priority in recovery. The policy contains the following relevant provisions:

> **WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?**
>
> Unum has the right to recover any overpayments due to:
> -fraud;
> -any error Unum makes in processing a claim; and
> -your receipt of deductible sources of income
> You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

(UA-CL 105).

**WHAT ARE DEDUCTIBLE SOURCES OF INCOME?**

The amount you receive from a third party (after subtracting attorney's fees) by judgment, settlement, or otherwise.

(UA-CL 117).

**OTHER RIGHTS**

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from a third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the policy. Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

(UA-CL 136).

Ms. Jalali argues that "[t]hese provisions, considered separately or together, are neither 'specific' nor 'clear' in establishing Unum's *priority* to any recovery." (ECF No. 24 at 17).

At minimum, there is some ambiguity as to whether these provisions establish both Unum's priority in recovery and right to any full or partial recovery. The first two provisions relate specifically to "overpayments" and could therefore be read as any payments beyond those which would make Ms. Jalali whole. In other words, they are not necessarily inconsistent with the make whole rule. The third provision is a closer call because it notes that the right of Unum's recovery "is enforceable even if the amount you receive from a third party is less than the actual loss suffered by you" and that Unum has "an equitable lien over such sources of income." But Unum has not attempted to establish an equitable lien over the settlement funds. Because there is no dispute that the settlement funds have been dissipated, it cannot do so now.

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 661 (2016) (holding that a plan cannot recover out of a participant's general assets).

Finally, Ms. Jalali argues that she has not been made whole by the settlement. The administrative record contains evidence that her future wage loss exceeded the amount of the settlement (UA-CL 2780-2823) and jury verdict reports where the amount awarded for pain and suffering exceeded the settlement amount (UA-CL 2863-2883). But this evidence is not conclusive, and the Court finds it necessary to remand to Unum to determine whether Ms. Jalali has been made whole by the settlement. *See Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000).

In short: the language in the policy does not conclusively establish Unum's priority in recovering the settlement funds. The make whole rule applies, but the record does not definitively establish that Ms. Jalali was or was not made whole by the settlement. The Court **DENIES** both Motions for Summary Judgment and **REMANDS** the matter to Unum for further fact-finding.

### IV. CONCLUSION

The Motion for Summary Judgment by Plaintiff Sepanta Jalali is **DENIED** (ECF No. 24) and the Motion for Summary Judgment by Defendant Unum Life Insurance Company of America is **GRANTED IN PART** and **DENIED IN PART** (ECF No. 25). The matter is hereby **REMANDED** to Unum for further fact-finding.

**IT IS SO ORDERED.**

                                                    s/Algenon L. Marbley
                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED: September 18, 2018**